

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

March 30, 2026

Honorable Sanket J. Bulsara
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Rolman Roberto Garcia Xicay v. Leeper, et. al.*, No. 26-cv-1833 (SJB)

Dear Judge Bulsara:

This Office represents Judith Almodovar, in her official capacity as Acting New York Field Officer Director, U.S. Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, in his official capacity as Acting Director of ICE and Pamela Bondi, in her official capacity as Attorney general, U.S. Department of Justice ("Federal Respondents")[1] in the above-captioned case in which Petitioner Rolman Roberto Garcia Xicay ("Petitioner") filed a petition for a writ of habeas corpus on March 27, 2026 challenging his detention by ICE. *See* Docket Entry ("DE") No. 1 (the "Petition"). Federal Respondents respectfully submit this letter and accompanying Declaration in response to the Court's March 27, 2026 Order and the Petition.

The legal issues presented in this action concern whether Petitioner's detention violates his procedural and substantive due process rights and the Immigration and Nationality Act ("INA") under the Administrative Procedure Act, 5 U.S.C. § 701 et. seq ("APA"), and how, if at all, Petitioner's previous grant of Special Immigrant Juvenile Status ("SIJS") affects the detention authority analysis. Petitioner principally seeks an order from this Court directing ICE to immediately release him from detention.

**Detention Background**:

As set forth in the accompanying declaration of Deportation Officer Craig Limoncelli, Petitioner was arrested by ICE officers on March 27, 2026 outside the Yaphank Correctional Facility in Suffolk County, New York as part of a targeted operation. ICE arrested Petitioner pursuant to 8 U.S.C. § 1225 (b)(2)(A).

On or about September 28, 2017, United States Customs and Border Patrol (CBP) agents arrested Petitioner at or near Roma, Texas and issued him an I-862, Notice to Appear charging

---

[1] This office does not represent the fourth respondent, Bill Leeper, in his official capacity of Sheriff of Nassau County Correctional Center.

removability under Section 212(a)(6)(A)(i) of the INA (the "2017 NTA"). *See* Limoncelli Decl. ¶¶ 3-4.[2] At that time, Petitioner was 16 years old and identified as an Unaccompanied Alien Child ("UAC"). *Id.* ¶ 3. On November 15, 2017, Petitioner was released on his own recognizance to the custody of his father.[3] *Id.* ¶ 5. On December 27, 2018, Petitioner filed an I-360, a Petition for Amerasian, Widower, or Special Immigrant, with USCIS. *Id.* ¶ 8. On April 3, 2020, USCIS approved Petitioner's petition. *Id.* On June 13, 2022, USCIS granted Petitioner Special Immigrant Juvenile Deferred Action. *Id.* USCIS database records indicate that USCIS terminated Petitioner's Deferred Action on February 13, 2023. *Id.* ¶ 10.

On November 25, 2025, Petitioner was convicted of Driving While Intoxicated ("DWI") following a November 2024 arrest and sentenced, *inter alia*, to 90 days imprisonment. *See id.* ¶ 22. Previously, Petitioner was also arrested three other times, in 2019, 2020, and 2022. *See id.* ¶¶ 18-21.

On January 28, 2026, ICE issued an I-200, Warrant of Arrest, for Petitioner. *See id.* ¶ 24. On March 27, 2026 Petitioner was arrested at Yaphank Correctional Facility following the conclusion of his 90 day sentence for his DWI conviction, pursuant to an immigration detainer. *Id.* ¶¶ 23, 26. Petitioner was transported to ICE's processing offices at Nassau County Correctional Center ("NCCC") and subsequently transferred to 26 Federal Plaza in New York City. *See id.* ¶ 28. As of today, Petitioner remains detained at 26 Federal Plaza. *Id.* ¶ 29. In the event Petitioner is detained after today, there is a possibility he may be transferred. ICE is aware of the Court's order limiting his detention to the Eastern District of New York and the Southern District of New York.

**Discussion Regarding the Merits of the Petition**[4]

---

[2]    The 2017 NTA, the 2017 Notice of Custody Determination and 2017 I-200 Warrant for Arrest referenced in paragraph 4 of the Limoncelli Declaration are filed herewith as Exhibit B, although the declaration does not state that they are attached.

[3]    Once he was released to his father, Petitioner was no longer a UAC, because by definition a UAC is a child who is not yet 18, lacks lawful immigration status, and *has no parent or legal guardian able to provide care and physical custody* in the United States. *See* 6 U.S.C. § 279(g)(2).

[4]    This Office notes that it filed similar letters as this with Your Honor in several other matters, including, *inter alia*, *Flores-Linares v. Bondi, et. al.*, No. 26-cv-298 (Bulsara, J.) on January 20, 2026; *Argueta v. Francis, et.al.*, No. 26-cv-408 (Bulsara, J.) on January 26, 2026; *Delarca-Avila v. Bondi, et al.*, No. 26-cv-0543 (Bulsara, J.), on February 2, 2026; *Rivera Orellana v. Noem, et al.,* No. 26-cv-0574 (Bulsara, J.), on February 3, 2026; *Romero v. Bondi, et.al.* 26-796 (Bulsara, J.) on February 13, 2026; *Sandoval v. LaRocco, et al.,* No. 26-cv-00832 (Bulsara, J.) on February 13, 2026; *Magana v. Joyce, et.al.* No. 26-CV-835 (Bulsara, J.) on February 13, 2026; *Antonio Benitez v. Genalo, et al.,* No. 26-cv-1122 (Bulsara, J.) on February 27, 2026; *Omar Abreu v. Genalo, et al.,* No. 26-cv-1181 (Bulsara, J.) on March 4, 2026; *Andrade Escobar v. Mullin, et. al.*, No. 26-cv-1661 (Bulsara, J.) on March 20, 2026.

<u>Detention Authority</u>

The statutory basis for detaining Petitioner is 8 U.S.C. § 1225(b)(2)(A). In sum and substance, Petitioner alleges that his detention violates his due process rights and his detention violates the INA because he is subject to 8 U.S.C. § 1226, not 8 U.S.C. § 1225.  In light of this Court's decision on the principal legal issues in *Bonilla-Romero v. Bondi, et al.*, 26-cv-0796, Memorandum and Order entered February 13, 2026 (DE No. 7)*,* and other matters, including, but not limited to, *Parada Cruz v. Noem, et al.*, No. 26-cv-1110, Memorandum and Order entered February 27, 2026 (DE No. 7); *Magana v. Joyce, et. al*, No. 26-cv-835, Memorandum and Order entered February 13, 2026 (DE No. 13); *Sandoval v. LaRocco, et al.*, No. 26-cv-00832, Memorandum and Order entered February 13, 2026 (DE No. 10); and *Rivera Orellana v. Noem, et al.*, No. 26-cv-0574, Memorandum and Order entered February 3, 2026 (DE No. 7), which found that an individual who has resided in the United States is not subject to Section 1225, Federal Respondents acknowledge that, should the Court follow its prior precedent here, they cannot prevail in this action.

While Federal Respondents respectfully disagree with the Court's assessment of the § 1225/§ 1226 issue, they submit this letter in lieu of a formal responsive memorandum of law to conserve judicial and party resources, and to expedite the Court's consideration of this case,  and respectfully submit that the Court can decide this matter without further briefing.

However, Federal Respondents respectfully submit that the facts here are more similar to those in *Saamishvili v. Flanagan*, No. 25-cv-6178, 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026) (Cogan, J.), in which petitioner was already in removal proceedings at the time of detention, as was Petitioner. *See Saamishvili*, 2026 WL 377574, at *1 ("Since his unlawful entry, petitioner has been, and continues to be, subject to the mandatory detention requirement of Section 1225(b)(2)(A)"). *See also Garcia Lanza v. Noem, et al.*, No. 26-cv-0029 (Brown, J.), Memorandum and Order entered March 3, 2026 (DE No.15), FN 9 (noting that in *Saamishvili*, ICE had commenced removal proceedings against petitioner upon his entry in the country). Accordingly, the Federal Respondents adopt and incorporate the arguments in the Government's Memorandum of Law in *Saamishvili* (DE No. 14).  Additionally, Federal Respondents respectfully note that on February 6, 2026, the Court of Appeals for the Fifth Circuit, while not binding on this Court, held that the government's interpretation of 8 U.S.C. § 1225 was correct*. Buenrostro-Mendez v. Bondi*, 166 F. 4th 494 (5th Cir. 2026). Further, on March 25, 2026, the Eighth Circuit Court of Appeals became the second U.S. Court of Appeals to hold that the government's interpretation of 8 U.S.C. § 1225, which mandates detention of non-citizens falling under its scope, is correct. *See Joaquin Herrera Avila v. Bondi et al.*, No. 25-cv-3248, 2026 WL 819258, *4 (8th Cir. Mar. 25, 2026) ("While ultimately 'Congress's purpose matters far less than what it wrote,' the purpose here nevertheless 'confirms what the statutory text already makes clear,' which is that § 1225(b)(2)(A) mandates the detention of unadmitted aliens already present inside the United States.") (quoting *Buenrostro-Mendez, 166* F.4th at 508). Federal Respondents further note that, in addition to *Saamishvili*, a number of decisions in this Circuit have endorsed the Government's interpretation of the relevant statutory provisions and have ruled in the government's favor on this issue. *See Alvarado Quezada v. Francis,* No. 26-cv-387, 2026 WL 380711, at *4 (S.D.N.Y. Feb. 11, 2026) (Cronan, J.)*; Arana v. Arteta*, 26-cv-240, 2026 WL 279786 (S.D.N.Y. Feb. 3, 2026) (Woods, J.); *Chen v. Almodovar*, 25-cv-9670, 2026 WL 100761, at *8-9 (S.D.N.Y. Jan. 14, 2026)

(Cronan, J.); *Weng v. Genalo et al.*, No. 25-cv-09595, 2026 WL 184627, at \*1 (S.D.N.Y. Jan. 23, 2026) (Rearden, J.); *Candido v. Bondi*, 25-cv-867, 2025 WL 3484932, at \*2 (W.D.N.Y. Dec. 4, 2025) (Sinatra, J.); *Chen v. Almodovar, et al.*, No. 25-cv-8350, 2025 WL 3484855, at \*7 (S.D.N.Y. Dec. 4, 2025) (Vyskocil, J.), notice of appeal filed Dec. 16, 2025; *Liang v. Almodovar*, No. 25-cv-9322, 2025 WL 3641512, at \*8 (S.D.N.Y. Dec. 15, 2025) (Vyskocil, J.), notice of appeal filed Jan. 15, 2026. In addition to pending appeals by petitioners regarding the denials of habeas petitions as noted above, the Government has affirmatively appealed the grant of a habeas petition in *Cunha v. Moniz*, 25-cv-6532 (W.D.N.Y. Nov. 25, 2025) (concluding, *inter alia*, that Section 1226(a), not Section 1225(b)(2)(A), applied), *notice of appeal* filed Dec. 11, 2025, No. 25-3141 (2d Cir.). The *Cunha* appeal is scheduled for oral argument on April 6, 2026.

<u>Effect of SIJS on Detention Authority</u>

While Petitioner does not mention his SIJS in the Petition, let alone argue that it forecloses his arrest or detention (*see generally* DE No. 1), Federal Respondents respectfully note that, even if Petitioner had made that argument, an approved SIJ petition does not provide any protection from detention or removal.[5] *See Benito Vasquez v. Moniz*, No. 25-cv-11737, 2025 WL 1737216, at \*2 (D. Ma. June 23, 2025) ("The fact that petitioner has been given [SIJ] status has no effect on

---

[5]     When Congress enacted the Immigration and Nationality Act of 1990, it "included a new form of immigration relief for non-citizen children" – SIJ status. *Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018). Although 8 U.S.C. § 1101(a)(27)(J) refers to SIJ classification as SIJ "status," SIJ classification is *not* lawful status. *See* March 7, 2022, Policy Alert, available at https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (last accessed March 29, 2026) ("SIJS Policy Alert"). However, there are two primary benefits of SIJ status. *First*, individuals with SIJ classification can apply for adjustment of status if they are eligible, admissible, and—importantly—an immigrant visa is immediately available. 8 U.S.C. § 1255(a) (to adjust status, "an immigrant visa [must be] immediately available" at the time an application is filed and adjudicated); 8 C.F.R. § 245.1(e)(3)(i). It is within the federal government's discretion to confer LPR status. *See* 8 U.S.C. §§ 1255(a), (h). *Second,* if an SIJ is placed in removal proceeding and is charged as being deportable, certain waivers exists with respect to such deportability. *See* 8 U.S.C. §§ 1227(c); *Reyes v. Cissna*, 737 F. App'x 140, 142 (4th Cir. 2018).

While a visa is necessary for an SIJ to apply to adjust status, Congress limited the number of immigrant visas annually available to non-citizens in the employment-based fourth preference category (EB4), which includes SIJs. 8 U.S.C. § 1153(b)(4). Consequently, because there are more SIJs than available immigrant visas, SIJs must wait, sometimes for years, before an immigrant visa is available, which is determined by the SIJ's priority date (i.e., the date when USCIS received their SIJ petition). *See* Dep't of State, November 2025 Visa Bulletin, Employment Based Preferences (Fourth), available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2026/visa-bulletin-for-november-2025.html (last accessed March 29, 2026); SIJS Policy Alert ("due to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years"). Although the priority dates have retrogressed the past three years due to a significant increase in SIJ petitions, Congress has not changed the adjustment-of-status process for SIJs or provided them any interim benefits.

ICE's statutory and regulatory authority to detain him. Other federal courts have routinely recognized that SIJ status alone does not render an alien lawfully present in the country and thus does [not entitle] him to release, nor does it prevent the government from affecting his removal."); *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018) (explaining that while "[t]he SIJ program offers aliens a multitude of benefits and protections, including the opportunity to seek lawful permanent resident status[,] … without an adjustment of status, "an SIJ designation does not strip the U.S. government of all removal powers," and SIJs are still subject to arrest, detention, and removal from the United States until their priority date is current); SIJS Policy Alert ("SIJ classification does not render a noncitizen lawfully present[] [and] does not confer lawful status.").

Federal Respondents acknowledge that in two decisions issued earlier this month, the Honorable Gary R. Brown found that a grant of SIJS is equivalent to a grant of parole, and that therefore, a petitioner with SIJ classification could not be arrested or detained. *See Sanchez Alfaro v. Almodovar et al.*, No. 26-cv-00766, 2026 WL 734348 (March 16, 2026) (Brown, J.) and *Garcia-Lanza*, 2026 WL 585130, at *6 ("[T]he 1225/1226 distinction argument misses the mark entirely: having been awarded SIJ status, deferred action and work authorization,[6] and with no removal proceedings having been commenced, the petitioner simply was not subject to arrest."). Federal Respondents respectfully disagree with the decisions in *Alfaro* and *Garcia-Lanza*, particularly the conclusion that the grant of SIJS is the effective equivalent of parole. *See id.* ("While ICE did not parole Garcia Lanza, another branch of Government did: the United States Congress") (citing 8 U.S.C. § 1255(h) (an individual awarded SIJ status "shall be deemed … to have been paroled into the United States")). Federal Respondents respectfully note that an individual with SIJS is deemed to be paroled only for the limited "purposes of subsection (a)," *i.e.* § 1255(a). *See* § 1255(h)(1); *see also Garcia-Lanza*, 2026 WL 585130, at * 6 ("ICE's Policy Manual [ ] provides that 'the beneficiary of an approved SIJ petition is treated *for purposes of the adjustment application* as if the beneficiary has been paroled, regardless of the beneficiary's manner of arrival in the United States.'")[7] (emphasis added). Without the deeming language of § 1255(h)(1), SIJS applicants who, like Petitioner here, typically enter the United States without inspection, admission or parole, would not be eligible for adjustment of status which requires, *inter alia*, that the applicant be "inspected and admitted or paroled into the United States." § 1255(a). However, outside of its relevance to the § 1255(a) adjustment process itself, SIJS is not deemed to be the equivalent of parole for any other purposes under the immigration law or USCIS policy, nor is it applicable to ICE's authority to arrest or detain individuals with SIJ status. *See* § 1255(h)(1).

Petitioner's APA Claim

---

[6]    Unlike the petitioners in *Garcia Lanza* and Alfaro, Petitioner in this case had SIJS, but not deferred action or work authorization, at the time of his detention, because his deferred action was terminated by USCIS before he was detained. *See* Limoncelli Decl. ¶¶ 10, 25. Additionally, unlike the petitioners in *Garcia Lanza* and *Alfaro*, Petitioner in this case was already in removal proceedings at the time of his detention.

[7]    The court attributed the quoted language to "ICE's Policy Manual," however, the quoted language comes from USCIS's policy manual. *See Garcia-Lanza*, 2026 WL 585130, at * 6; *compare id.* at n.10 (citing link to USCIS policy manual).

Finally, to the extent that an APA claim is asserted by the Petitioner for a purported violation of the INA, these statutes are not the proper vehicle for Petitioner's claims arising out of his detention, which drives this suit. In *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025), in which claims including due process claims were brought under the APA, the INA and various habeas provisions, the Supreme Court held that where the claims for relief, as here, "necessarily imply the invalidity of their confinement," regardless of whether he requests release from confinement, those claims "fall within the 'core' of the writ of habeas corpus and must be brought in habeas." The Supreme Court's holding is consistent with well-established law that habeas is generally the only possible district court vehicle for challenges brought pursuant to immigration statutes. *Id.* (citing *Heikkila v. Barber*, 345 U.S. 229, 234-35 (1953)). All the claims in this suit constitute a core habeas claim — though they fail for the reasons discussed above—and are not cognizable under the INA or the APA. Further, by the APA's terms, it is available only for agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, Petitioner's APA claims are independently barred by this limitation. As noted by Justice Kavanaugh's concurrence in *J.G.G.*, "given 5 U.S.C. § 704, which states that claims under the APA are not available when there is another adequate remedy in court, I agree with the Court that habeas corpus, not the APA, is the proper vehicle here." *J.G.G.*, 604 U.S.at 674 (Kavanaugh, J. concurring). Here, as in *J.G.G.*, habeas is an "adequate remedy" through which Petitioner can challenge his detention.

***

Accordingly, Federal Respondents have no objection to the Court deciding the petition on the submissions in lieu of a hearing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/ *Marika M. Lyons*
Marika M. Lyons
Assistant United States Attorney
(631) 715-7822
Marika.lyons@usdoj.gov

cc:   <u>By ECF</u>
Michael Z. Goldman, *Counsel for Petitioner*