**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Rolman Roberto Garcia Xicay,**<br><br>***Petitioner*****,**<br>**v.**<br><br>**Bill Leeper, Sheriff of Nassau County,**<br><br>**Judith Almodovar,**<br>**in her official capacity as Acting New York Field Office Director, U.S. Immigration & Customs Enforcement,**<br><br>**Todd M. Lyons,**<br>**in his official capacity as Acting Director of Immigration & Customs Enforcement, and**<br><br>**Todd Blanche, Acting U.S. Attorney General, U.S. Department of Justice,**<br><br>***Respondents.*** | **Case No. 26-cv-01833 (SJB)** |

**Reply to Opposition to Motion for EAJA Fees**

This Reply is submitted in response to Respondents' Memorandum of Law in Opposition to Petitioner's Motion for Attorney Fees, ECF No. 14 ("Opposition").

Under the EAJA, the Government's position is "substantially justified" only if its conduct was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 485 U.S. 552, 595 (1988). The Government bears the burden of proving its position was justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). Significantly, the government must meet this threshold *twice*—it must independently establish that the agency conduct that gave rise to the

litigation was substantially justified, *and* that its litigation position also was substantially justified. 8 U.S.C. § 2412(d)(2)(D); *Smith by Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir. 1989) ("Congress made clear that for EAJA purposes, a court should inquire into both the underlying agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination."). *See also Michelin v. Warden Moshannon Valley Corr. Ctr.,* 169 F.4th 418, 433 (3d Cir. 2026) ("'In immigration cases, the Government must meet the substantially justified test twice': once for its underlying conduct and once for its decisions in the ensuing litigation about that conduct.") (*quoting Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005)).

Here, Respondents fail to meet their burden to show either that ICE's conduct, or the litigation position taken by the U.S. Attorney's Office in this matter, were substantially justified. Respondents detained Petitioner on March 27, 2026, without any notice or an opportunity for an individualized bond hearing, and thereafter represented to the Court that such action was legal pursuant to 8 U.S.C. § 1225(b)(2). At the time, Respondents were engaged in the practice of detaining non-citizens without notice, and without an opportunity for bond, a campaign that continues without abatement today. There is no debate that this new practice was not the result of a change in the law, but because of politics.[1]

---

[1] *See Cunha v. Freden*, --- F.4th ---, 2026 WL 1146044, at *23 (2d Cir. April 28, 2026) (Cabranes, J., *concurring*) ("On appeal, Respondent argues that Congress clearly required the Executive to detain millions of people like Petitioner—parents of American children, owners of American businesses, members of American communities—but that some thirty years passed before anyone noticed. In the meantime, fifteen Congresses stood silently by as five presidents ignored the plain text of the statute. Immigration officials also failed to grasp that Congress had told them to round up people by the millions. The capacity to carry out the largest detention in American history went unbuilt. Today this Court, in the majority's exhaustive opinion, refuses to credit Respondent's tale. This is good news."). *See also Castanon-Nava v. U.S. D.H.S.*, 161 F.4th 1048, 1062 n. 13 (7th Cir. 2025) (internal quotations and citations omitted) ("It also does not escape our notice that Defendants' recent reliance on § 1225(b)(2)(A) to detain noncitizens

1. *The Agency's Prelitigation Position was Not Substantially Justified*

In their Opposition, Respondents argue their behavior is "substantially justified" because a minority of judges have ruled in their favor. But even if this argument justified their litigation position (it doesn't, *see infra*, Part #2), this argument fails to carry their burden of showing that *ICE's* practice of no-bond detention without notice was substantially justified, and this dooms their Opposition altogether. *See United States v. 515 Granby, LLC*, 736 F.3d 309, 316 (4th Cir. 2013) ("[W]hen the government's unjustified prelitigation position forces a lawsuit, the petitioner may recover fees under the EAJA for the entire suit, even if the government's litigation position was reasonable.").

Indeed, "the Government's response . . . makes no reference to its position during the underlying proceedings (focusing instead on the proceedings in our Court), and it has thus waived any argument on this ground." *See Johnson*, 416 F.3d at 211. *See also Kumar v. Soto*, No. 26-cv-00203-CPO, ECF No. 21, at 3-4 (D.N.J. April 17, 2026) (attached hereto as Exhibit A) ("Respondents' Opposition does not even attempt to address the reasonableness of the source conduct giving rise to this case; that is, the Department of Homeland Security's abrupt re-interpretation of the meaning of 'applicants for admission' under § 1225. . . . Respondents have therefore failed to meet their burden to establish substantial justification of their prelitigation position.").

---

discovered within the United States upends decades of practice. Before July 8, 2025, DHS's long-standing interpretation had been that § 1226(a) applied to those who have crossed the border between ports of entry and are shortly thereafter apprehended. Mandatory detention of all persons illegally in the United States only became official DHS policy when Acting Director of ICE Todd M. Lyons issued an internal memorandum on July 8, 2025 explaining that the agency 'revisited its legal position' on the applicability of §§ 1225(b) and 1226(a)."). *See also Matter of Hurtado*, 29 I.&N. Dec. 216, 225 & n.6 (BIA 2025) ("We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection.").

But *even if* Respondents had not waived any argument concerning ICE's underlying conduct, a multitude of judges within this District, including Your Honor in this very case, have ruled that ICE's practice of detention without notice is illegal and in violation of the Constitution. *See Garcia Xicay v. Leeper*, No. 26-cv-01833 (SJB), ECF No. 8 (E.D.N.Y. March 8, 2026) ("The Government elects to rely on an inapplicable provision, under which detention violates Petitioner's due process rights."); *Inestroza Carbajal v. Frazier*, 26-CV-2778-SJB, 2026 WL 1309265, at *2 (E.D.N.Y May 12, 2026) ("Respondents proceeded under § 1225(b)(2) to deprive Inestroza Carbajal of well-defined procedural protections. The ICE policy that led to Inestroza Carbajal's initial detention 'is defined by its systematic denial' of notice and an opportunity to be heard.") (*quoting Chipantiza-Sisalema v. Francis*, No 25-CV-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)); *Yin v. Maldonado*, 26-CV-0103 (PKC), 2026 WL 295389, at * 2 (E.D.N.Y. April 7, 2026) ("Because Respondents detained Petitioner pursuant to the wrong statute, his due process rights were violated."). *See also, e.g., Sumit v. Maldonado*, 26-cv-650-AMD, 2026 WL 371132, at *2 (E.D.N.Y. Feb. 10, 2026) ("[T]he petitioner, who was previously released on his own recognizance on November 30, 2023, is currently being detained pursuant to 8 U.S.C. § 1226 and in violation of his rights to due process under the Fifth Amendment of the Constitution. Furthermore, the Court finds that even if Section 1225 applied to the petitioner's detention, the petitioner was still entitled to due process before the government arrested him and detained him on November 14, 2025. Under either section of the INA, the government has unlawfully detained the petitioner since November 14, 2025 because it denied him due process."); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 478, 494 (E.D.N.Y. 2025) ("What happened next was anything but routine. Without any prior notice or explanation, as Hyppolite and his father (who had accompanied him to the hearing) left the courtroom, they found

themselves surrounded and detained by agents with U.S. Immigration and Customs Enforcement ('ICE'). Although his father was released after establishing that he was a U.S. citizen, Hyppolite was not. Instead, he was placed into handcuffs and leg shackles and forcibly removed to a 'holding area' at a nearby federal office building. . . . [T]his Court concludes that his detention violates his procedural due process rights under the Fifth Amendment, warranting a grant of his habeas petition and his immediate release.").

A violation of the Constitution cannot be substantially justified. *See Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1278 (9th Cir. 1997) ("If the government's position violates the Constitution . . . a finding that the government was substantially justified would be an abuse of discretion.").

2. *The Agency's Litigation Position was Not Substantially Justified*

As recounted above, Respondents presented to this Court a legal theory that had been rejected by every Judge but one in this District, including this Court previously. Indeed, as found only recently by Judge Quraishi of the Federal District of New Jersey:

> The Government's handling of Petitioner's detention is emblematic of its approach to immigration enforcement in this state. On the merits, its detentions are illegal. *The Government knows this*. Its reliance on § 1225 has been roundly rejected: federal courts have in near unanimity similarly rejected respondents' position in approximately 300 cases to date, a number which climbs with each passing day.

*Cartagena Hueso v. Soto*, No. 26-1455 (ZNQ), 2026 WL 539271, at *3 (D.N.J. Feb. 26, 2026) (emphasis added). *See also Inestroza Carbajal*, 2026 WL 1309265, at *4 ("In sum, Respondents' detention, effectuated pursuant to § 1225(b)(2) violated Inestroza Carbajal's due process rights. Hundreds of judges in countless cases have found that the arrests and detention of individuals like Inestroza Carbajal—a resident of the United States for an extended period of time—under § 1225(b)(2) violated their procedural due process rights.")

Respondents' Opposition instead focuses on the limited caselaw supporting its legal position. But as noted by Judge Donnelly just recently in awarding EAJA fees in a factually similar matter, the existence of this minority caselaw is largely irrelevant:

> 'The issue for EAJA purposes is not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation.' At the time the parties litigated the petition, the Fifth Circuit had not decided *Buenrostro Mendez* — which, in any event, is not binding on the Court. Nor had any court in this District agreed with the government's position.

*L.R.C. v. Maldonado*, 25-CV-6825 (AMD), 2026 WL 946787, at *2 (E.D.N.Y. April 7, 2026) ("*L.R.C.*") (*quoting Commodity Futures Trading Com'n v. Dunn*, 169 F.3d 785, 787 (2d Cir. 1999)). "Then — as now — the respondent's position 'd[id] not and ha[d] never had a reasonable basis in statutory text, structure, or history, and ha[d] been rejected with near unanimity in the overwhelming majority of cases across the country.'" *Id.* (*quoting Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 506 (S.D.N.Y. 2025)).[2]

Because Respondents' legal position in this matter was not "substantially justified," EAJA fees are appropriate. *See Sumit v. Maldonado*, 26-CV-650 (AMD), ECF No. 17 (E.D.N.Y. April 28, 2026) (attached hereto as Exhibit B) (awarding EAJA fees in factually similar habeas proceeding); *Kumar*, No. 26-cv-00203-CPO, ECF No. 21, at 6 (Ex. A) (awarding EAJA fees in factually similar habeas proceeding; "this Court joins the growing number of district courts nationwide who have awarded fees pursuant to the EAJA for Respondents'

[2] Respondents are correct that the Fifth Circuit's Decision in *Buenrostro Mendez v. Bondi* was issued prior to the Court's decision in this matter, as was Judge Cogan's decision in *Saamishvili v. Flanagan,* No. 25-cv-6178, 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026). Petitioner respectfully submits that these distinctions are of little significance. *See L.R.C.,* 2026 WL 946787, at *2 (noting that *Buenrostro Mendez* is not binding authority). *See also id.* ("*Then — as now* — the respondent's position . . . ha[d] been rejected with near unanimity in the overwhelming majority of cases across the country.'") (*quoting Barco Mercado*, 811 F. Supp. 3d at 506) (emphasis added).

unlawful immigration detention practices") (collecting authority); *L.R.C.*, 2026 WL 946787, at *5 (awarding EAJA fees in factually similar habeas proceeding in the amount of $15,497); *Cornejo Guanuquiza v. Francis*, 25-CV-10267 (RA), 2025 WL 3678121, at *2 (S.D.N.Y. Dec 18, 2025) (awarding EAJA fees in factually similar habeas proceeding; "[t]he Court finds that the Government's position 'was not substantially justified,' since it does not 'and has never had a reasonable basis in statutory text, structure, or history.'"); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 478 (S.D.N.Y. 2025) ("Here, Yao is the prevailing party, and ICE's position, rejected this year in some 97% of the cases in which it was litigated, was not substantially justified. Yao is thus entitled to reasonable fees and costs."); *Rivera Esperanza v. Francis*, No. 25-CV-8727 (RA), 2025 WL 3513983, at *9 (S.D.N.Y. Dec. 9, 2025) (awarding EAJA fees in factually similar habeas action); *Barco Mercado v. Francis*, 811 F. Supp. 3d at 506 ("[Respondents'] position has been rejected with near unanimity in the overwhelming majority of cases across the country. Mr. Barco is entitled to reasonable fees and costs.").

3. *Travel Time is Allowable under the EAJA*

Contrary to the argument of Respondents, courts commonly recognize compensation for reasonable attorney travel time under the EAJA. *See, e.g., Maerkel v. Commissioner of Social Security*, No. 3:17-cv-00170 (JAM), 2020 WL 57526, at *2 (D. Conn. Jan. 6, 2020) ("Courts in this district will typically award travel time at an attorney's usual fee rate when the travel is reasonable, the request is modest, and the representation successful."); *Tagliavento v. Berryhill,* Case # 15-CV-250-FPG, 2017 WL 3866021, at *2 (W.D.N.Y. Sept. 5, 2017) ("The Court agrees with Plaintiff that four hours is a reasonable amount of time to spend preparing for oral argument, which requires counsel to travel from Buffalo to Rochester and be prepared to discuss all aspects of the case and answer any questions the Court may have. Additionally,

counsel's travel time is reimbursable under the EAJA as 'fees and other expenses' because the round trip was required for a court proceeding and not another purpose."); *Lussenhop v. Clinton County, N.Y.,* 558 F. Supp. 2d 247, 272 (N.D.N.Y. 2008) ("In order to be present for oral argument on her Appeal before the Second Circuit, we accept that the distance between Plattsburgh to New York City is significant and travel between the two to be especially time consuming. Accordingly, we will reimburse Luessenhop the sum of $1,762.50 for travel."); *Eames v. Sullivan*, No. CIV–81–483E, 1989 WL 126542, at *6 (W.D.N.Y Oct. 20, 1989) ("More reasonably, 12 hours should have sufficed—five for preparation of the affidavit and memorandum, two hours for the reply affidavit and an additional five hours for appearing at oral argument (including approximate travel time from Bath, N.Y. and return).").

4. *Any EAJA Award Should be Adjusted*

Should the Court find an EAJA award appropriate, the award should be increased for the 6.5 hours spent researching and drafting this Reply, for a total of $5,255.41 (previous award submission of $3,547.40 + ($262.77 x 6.5)). *See* Exhibit C. *See also Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 162 (1990) ("We find no textual or logical argument for treating so differently a party's preparation of a fee application and its ensuing efforts to support that same application.").

Dated: May 20, 2026

Respectfully submitted,

/s/ Michael Goldman______________
The Law Offices of Michael Z. Goldman
100 Church St., Suite 800
New York, NY 10007
212 901-3799
michael@mzglaw.com

*Attorney for the Petitioner*